the authority of the defendant's attorney to make the contract was not fairly submitted. Upon this question the trial judge, without such reference to the evidence, submitted to the jury the question whether the attorney for the defendant had been invested with apparent authority to enter into the contract testified to in behalf of the plaintiff. Upon an exception being taken by the learned counsel for the defendant to the charge on this issue, the court further said : "If the defendant did not authorize its attorney, Van Hoesen, to buy the fifty bonds, but only to buy the one hundred bonds, it is not liable in this action even if the agent did agree to buy the fifty. The act of the agent in excess of his authority never binds the principal unless a third party, having a right to believe that the agent was acting within his authority, would sustain a loss if the act was not considered that of the principal." The plaintiff sought to establish the power of the defendant's attorney to make the contract by proving that the entire contract related to 150 bonds, and that the defendant had taken and paid for 100 bonds in accordance with the agreement. The defendant's attorney testified that he had no authority to purchase the fifty bonds; that he told the plaintiff's attorney so, and that he did not agree to buy them. Without reciting the evidence, we think a fair question of fact as to the authority of the defendant's attorney was raised, and that it was fairly submitted to the jury. The appellant urges that the court erred in refusing to permit the defendant's attorney to testify to the conversation between him and defendant's president. The question was: "Q. State what occurred with Mr. Roosevelt. Objected to; objections sustained. Exception by defendant." The appellant now urges that the object of this question was to show the extent of the authority given by the defendant to his attorney in respect to this matter. The question does not disclose that such was the subject of the inquiry, and we think that it was the duty of the defendant's counsel to have stated in this connection that he desired to show the extent of the authority conferred upon defendant's attorney. For any other purpose the conversation between Mr. Roosevelt and the defendant's attorney was incompetent. The contract, as testified to by the plaintiff's attorney, was taken out of the Statute of Frauds by the delivery of and payment for 100 of the 150 bonds. We think it sufficiently appears that the bank of Fayetteville had some interest in the fifty bonds and that jurisdiction was acquired, but, in any event, the defendant in this action had greater knowledge in respect to the interest of the bank than the plaintiff, and made its contract with reference to its knowledge, and it cannot now be heard to say that the bank of Fayetteville had no interest in these bonds. The judgment and order should be affirmed, with costs. Van Brunt, P. J., concurred.

James E. Delehanty, Respondent, v. The Philadelphia and Reading Railroad Company, Appellant.— Order affirmed, with ten dollars costs and disbursements. No opinion.

Poland Paper Company, Appellant, v. The American Wheelman, etc., Publishing Company, Respondent.— Order affirmed, with ten dollars costs and disbursements. No opinion.

In the Matter of Robert R. Hamilton.— Order affirmed, with ten dollars costs and disbursements. No opinion.

The Bank of America, Respondent, v. East River Silk Company, Appellant.— Order affirmed, with ten dollars costs and disbursements. No opinion.

Oliver M. Arkenburgh, Respondent, v. Robert H. Arkenburgh, Appellant.— Order affirmed, with ten dollars costs and disbursements. No opinion.

Randolph Koch and Another, Respondents, v. Charles L. Link and Others, Appellants.— Order affirmed, with ten dollars costs and disbursements. No opinion.

The Edison Electric Illuminating Company of New York, Respondent, v. William B. Riker, Appellant, Impleaded, etc.— Judgment affirmed, with costs.—

PER CURIAM: The evidence presented by this record is, with the exception of the testimony of one witness, substantially the same as in the case of Comyns v. Riker, which resulted in a judgment setting aside the transfer of certain property by William H. Riker to William B. Riker, on the ground that it was fraudulent and void as against the plaintiff, because made with intent on the part of the transferer to hinder, delay and defraud his creditors, and was accepted by the transferee with notice of such intent. This court on the appeal in Comyns' case affirmed the judgment (83 Hun, 473). On this review the evidence is substantially the same as in the Comyns' case, with the exception of the testimony of William H. Riker, the transferer, who was not sworn in that case, and we shall inquire whether a different result than was then had is now required because of it. The learned judge at Special Term thought not, and we see no reason to disagree with him. It was shown on the former trial that the father, William B. Riker, by mortgages upon his property, given at different times prior to October 2, 1891, obtained about $71,000, which was turned over to his son. And that the father transferred to his son his interest in the drug business, in December, 1887, for $60,000, for which six notes of $10,000 each were given. On account of these notes, and the moneys received from the mortgages, the son claims there was an indebtedness due to his father on February 12, 1892, of about $120,000, while the father claims the amount to have been $128,000. The fact that such moneys were turned over to the son, and the father's interest in the drug store transferred to him, were not in dispute on either trial, and to such extent the testimony of the son merely corroborates that of his father in the Comyns' case upon a point not disputed. The contention in that case was, as it is in this one, not that the father did not turn over the moneys to his son, but that he did not loan them to him. That instead, he intended them as a voluntary and absolute gift to his only child, and that it was only when the business failure of his son seemed imminent, that the plan developed of treating such gifts as advances and loans for the purpose of securing a foundation upon which to base a transfer of whatever of assets the son had remaining, at the expense of his other numerous creditors. In support of the contention of the plaintiff that the money was intended by the father as a gift to the son who succeeded him in business, it was proved that from the year 1878 to June 5, 1887, the father loaned to the son at various times, sums of money ranging from $200 to $4,400, aggregating $8,500. And that for each sum when loaned he took back the son's note. It was not until December 15, 1887, that the father executed a bill of sale to his son of his interest in the business carried on under the firm name of William B. Riker & Son, although he testifies that he had been previously out of the business: "I had nothing to do; my son did everything and took the entire profits for at least a year previous to my giving the bill of sale."